IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| PLAINTIFF, | * |
| | * |
| V. | * CASE NO. 1:05-cr-00153-MEF-CSC |
| | * |
| AL RAY SHOEMAKER, | * |
| | * |
| DEFENDANT. | * |

**MOTION FOR COURT RECOMMENDATION FOR
COMPASSIONATE RELEASE**

Comes now Al Ray Shoemaker by and through undersigned counsel and files a motion requesting the Court recommend to the Bureau of Prisons a compassionate release due to a terminal illness and in support thereof states the following:

**I. PROCEDURAL HISTORY**

Al Ray Shoemaker was originally sentenced to a term of 48 months for violations of 21 U.S.C. § 841 (f)(1) and 18 U.S.C. §2. He has applied for release pursuant to 18 U.S.C. §3582(c)(1)(A). The Warden at the Federal Medical Center at Butner, North Carolina has recommended a compassionate release based on Shoemaker's incurable metastatic cancer. His life expectancy is less than 18 months. He is in his tenth month of confinement. His projected release date is September 14, 2009. He is terminally ill. The compassionate release was denied by the Regional Director of the Mid Atlantic Region of the Bureau of Prisons because Shoemaker remains "**ambulatory**". Shoemaker is requesting the Court's assistance to urge the Bureau of Prisons to change its decision.

## II. MEDICAL CONDITION

Shoemaker prior to his plea and sentencing had been diagnosed with a ruptured diverticulum, resulting diverticulitis and an abscess formation. A partial colectomy was performed removing 18 inches of his colon.(Exhibit 1- Dr. Simmons Report) His former counsel was aware of this fact and knew or should have known of Shoemaker's potential risk for cancer. A medical examination prior to sentencing was essential in this case. This is so because a medical examination would have revealed the presence of his cancer and been mitigating information for the Court.(See Presentence Report page 9- paragraph 40) If known, Shoemaker would have been better off not to have entered a binding 11(c)(1)(c) plea agreement for a sentence of between 36 and 60 months. Given the Court's new found discretion post- *Booker*, and in consideration of U.S.S.G. 5H1.4 the sentence should have and could have been considerably less.

Shoemaker while an inmate at Maxwell Federal Prison Camp became ill and was treated at Baptist Medical Center, Montgomery, Alabama. He began his term of imprisonment on March 24, 2006, and was diagnosed at Baptist with colon cancer in August 2006. It is clear the cancer was present at the time the plea agreement was negotiated at the change of plea, and the February 2006 sentencing.

Shoemaker was transferred to the Federal Medical Center at Butner, North Carolina for surgery. However, CAT scans revealed that his cancer had metastasized with lesions in his colon, liver and lungs. (See Exhibit 2 Dr. Hildago Report) The doctors declined to perform surgery because Shoemaker was at risk of

worsening, having chronic bleeding, an obstruction or perforation, or other problems. (See Exhibit 3- Medical Report of Dr. W. Abe Andes) Dr. Andes report further notes, that Shoemaker "certainly he does have big time incurable disease."

Another prison physician, Dr. Sam Bone, in a report on Shoemaker noted under impressions, "Multiple hepatic masses consistent with metatastic disease. Evidence of slight overall progression since 9-1-06 as detailed above." ( Exhibit 4- Medical Report of Dr. Sam Bone) This report was prepared in late November 2006. It should be noted that new lesions were found as noted in; after Shoemaker had undergone five chemotherapy sessions.

Shoemaker made application with the Bureau of Prisons for a compassionate release based on his terminal illness. In preparation and in accordance with policy a Discharge Plan was completed by Robin Jackson, Senior Clinical Social Worker at the Butner facility where Shoemaker is housed. She wrote, "Mr. Shoemaker was transferred from FPC Montgomery to FMC Butner on August 24, 2006 with a diagnosis of Metastatic colon cancer with spread to liver and lungs. He is terminally ill with a poor prognosis." (Exhibit 5- Jackson Report)

In a summary by the Compassionate Release Committee Karen Russell wrote," General surgery was consulted and a subtotal colectomy was planned. However, in preparation for this surgery a colonoscopy was done which revealed an unexpected lesion in the lower rectum. The surgeon elected not to operate based on the widespread metastases to the rectal area as well as to the liver and to the lung." (Exhibit 6- Russell Report)

Shoemaker's wife sought and obtained a life expectancy prognosis from M. Scott McAllister, M.D., of Dothan Hematology and Oncology in Dothan, Alabama. On December 14, 2006 Dr. McAllister states, "statistically speaking, stage IV or metatastic colon cancer with the use of treatment, such as Folfira could carry a prognosis of around 22 months, assuming clinical response.

Of course, several factors can alter the statistics. This is a statistically incurable disease and the goal of treatment is palliation, extension of quality of life, and potential control of the disease for as long as possible." (Exhibit 7- McAllister Report)

In denying Shoemaker's request, it is obvious that the Bureau of Prisons uses a six month life expectancy as the trigger for recommending a compassionate release. This is evident in an October 2, 2006 Consultation Report done by Dr. Andes wherein he stated, " I don't consider him a good compassionate release candidate at this time since I expect him to live longer than six months" (Exhibit 8- Dr. Andes Report)

This is further confirmed in a September 26, 2006 Consultation Report prepared by Dr. Andes wherein he states, " He has subsequently seen folks with the compassionate release process and was told that he would be eligible for consideration. **I told him I thought that was generally withheld for people with less than 6 months to live**." (Exhibit 9-Dr. Andes Report)

It is clear from Dr. Andes September 26, 2006 report that he concurs with Dr. McAllister that Shoemaker's life expectancy, with treatment gives him 22 months to

4

live. Four months have now passed since that report, giving Shoemaker a prognosis for living no longer than 18 months.

Congress in enacting 18 U.S.C.§3582(c)(1)(A)Compassionate Release obviously recognized that certain offenders with terminal illness can be safely released to go home to die. Shoemaker meets this criteria. He is a non dangerous first offender with terminal cancer.

### III. SENTENCING GUIDELINES CASES FAVOR ALTERNATIVE SENTENCING IN CASES SUCH AS THIS

The federal courts have long recognized cases where compassion mandated a sentence reduction and or departure from the mandatory sentencing guidelines.

The following cases and guideline authorities provide some legal authority for alternatives to prison based on physical impairment. The United States Supreme Court decided *Koon v. U.S.*, 116 S.Ct. 2035 in 1996. *Koon* broadened the District Court's departure ability. Other authority in support of Shoemaker's request for compassionate release is noted throughout the Federal District and Circuit Courts as reflected in case law as follows:

U.S.S.G. §5H1.4, p.s. ("Physical Condition...is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range...However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range....")

U.S.S.G. Ch. 5, Pt.H, intro, comment. ("Furthermore, although these factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, they may be relevant to this determination in

exceptional cases. See §5K2.0 (Grounds for Departure)") (Effective November 1, 1994)

The 2nd Circuit in *United States v. Roiux*, 97 F.3d 648, 663 (1996) held where a defendant suffered from serious kidney problems, bone disease requiring double hip replacement, upheld departure.

Also, former Arkansas Governor Jim Guy Tucker, convicted in May 1996, on Whitewater related charges received a four-year suspended sentence following testimony by a transplant surgeon who said Tucker would likely die of liver disease if he were sent to prison.

*United States v. Streat*, 22 F.3d 109 (6th Cir. 1994) (although not deciding whether AIDS provides basis for departure, the court stated: "sections of the guidelines could justify a departure under certain circumstances," case reversed as a result of error in criminal history computation)

*United States v. Richard Gore*, No. MJG-91-0282 (D. Md. 12-17-92) (counterfeit defendant received departure from 18-24 months to 12 months, in part, because 40-year history of alcoholism had aggravated, if not caused, a series of extraordinary physical impairments [B12 deficiency, coronary artery disease, hypertension, seizure disorder, Parkinson's disease, emphysema, and two myocardial infractions])

*United States v. Edmondson*, No. CR-92-2036-AAM (E.D. Wash. 10-8-92) (departure from 30-37 months to 15 months in felon in possession case because defendant's disease was incurable and required regular intravenous replacement

therapy)

*United States v. Norberto Flores, Sr.*, No. EP-90-CR-142-H(1) (W.D. Tex. 4-10-91) (departure in drug distribution case from 21-27 month to 5 months in jail and 5 months halfway house for 67-year-old defendant with very poor health)

*United States v. Pamela Golemba*, No. H-89-22-04(JAC) D. Conn. 12-15-89 (several serious physical ailments including diabetes, several recent surgeries and chronic depression justified departure to probation)

*United States v. Long*, 977 F.2d 1264 (8th Cir. 1992) (money laundering defendant's extraordinary physical impairment which left him exceedingly vulnerable to possible victimization, and severe or fatal injuries if imprisoned, justified departure to home detention)

*United States v. Slater*, 971 F.2d 626 (10th Cir. 1992) (rejecting district court's decision that §5H1.4 only allowed departure to probationary sentence when ailment required hospitalization; reversed with instructions that physical condition could provide justification for imposition of less than guideline range or departure down to probation or home detention)

*United States v. Greenwood*, 928 F.2d 645 (4th Cir. 1991) (severe physical handicap and need for treatment justified departure for paraplegic veteran)

*United States v. Tillem*, 906 F.2d 814 (2nd Cir. 1990) (district court departed three months for defendant's failing health; defendant unsuccessfully argued on appeal that larger reduction was mandated)

7

*United States v. Ghannam*, 899 F.2d 327 (4th Cir. 1990) (defendant granted departure because of physical impairment; defendant unsuccessfully argued on appeal that district court's finding mandated a non-imprisonment sentence)

*United States v. McClean*, 822 F. Supp. 961 (E.D.N.Y. 1993) (drug defendant's severely crippled left leg and need for crutches justified departure in view of warden's apparent reluctance to adequately address disability problems; defendant would suffer more than average inmate and was vulnerable to being taken advantage of by other inmates; warden refused to allow metal crutches because other inmates would steal them and use them for fights)

*United States v. Arize*, 792 F. Supp. 920 (E.D.N.Y. 1992) (where defendant unaware of pregnancy at time of arrest and gave birth before sentencing, pregnancy and potential loss of child custody warranted departure from 41-51 to 23 months (state presumptively removed child from mother if incarcerated for 24 or more months)

*United States v. Pokuaa*, 782 F. Supp. 747 (E.D.N.Y. 1992) (downward departure granted, in part, because of risk of injury or death to mother or fetus posed by bringing complicated pregnancy to term in prison.

*United States v. Velasquez*, 762 F.Supp 39 (E.D.N.Y. 1991) (metastatic cancer supported downward departure from 151-188 to 60 months mandatory minimum)

*United States v. Little*, 736 F.Supp. 71 (D.N.J., aff'd, 919 F.2d 137 (3rd Cir. 1990) (district court reduced sentence from 6-12 months to 2 months because of

defendant's chronic obstructive pulmonary disease; defendant was unsuccessful in persuading appellate court that district court's factual findings mandated non-imprisonment sentence)

*United States v. Swapp*, 719 F.Supp. 1015 (D. Utah 1989) (departure given, in part, because defendant had been paraplegic since age 17 and received only minimal physical and mental therapy)

*United States v. Boy*, 1994 WL 59781 (9th Cir. 2-25-94) (departure based upon defendant's degenerative hip and knee condition and his affliction with non-active tuberculosis and Hyperactive Adjustment Disorder)

*United States v. Maltese*, 1993 WL 222350 (N.D. Ill. (6-22-93) (departure awarded 62-year-old defendant suffering from liver cancer based on cost of treating and housing defendant where prognosis was poor and statistics indicated that most liver cancer patients do not live one year)

*United States v. Vaughn*, 1993 WL 119704 (S.D.N.Y. 4-15-93) (defendant with lymphoma cancer who sold dilaudid was given a departure from 2 years to 1 year home detention)

*United States v. Mosesson*, 1989 U.S. Dist. Lexis 13837 (S.D.N.Y. 11-22-89) (departure justified where defendant's health so fragile that institutional incarceration might prove fatal)

*United States v. Jack Kellam*, No. 93-89-N (E.D. Va. 1-21-94) (66-year-old money laundering defendant given departure from 30-37 range to 30 months home confinement because of poor health including triple bypass surgery in 1987, a prior

stroke, systemic atherosclerosis, restrictive lung disease, headaches, and depression)

*United States v. Ralph Haines*, No. 92-70-Cr-J-20 (M.D. Fla. 11-23-93) (71-year-old minor participant in designer drug conspiracy who suffered from heart problems and hernia awarded departure because of advanced age and infirm health; defendant lived in Costa Rica and supported wife and 8 and 11-year-old children by operating ranch and bed and breakfast; he spent a long period in pretrial detention and attempted to cooperate but did not receive a §5K1.1 motion; prosecution joined in departure request from 63-78 months to 24 months; court imposed 27 months)

*United States v. Geryl Link*, No. 93-CR-159T (W.D.N.Y. 10-21-93) (departure from 24-30 months to probation for narcotics defendant with only one kidney and bad heart)

*United States v. Darryl Glover*, No. 4:CR-91-0183 (M.D. Pa. 2-25-93) (departure for defendant convicted of assault with a dangerous weapon, in part, because of extreme obesity [554 lbs.] and related health problems, as well as need for special housing due to his unusual physical characteristics and mental retardation - §5K2.0)

*United States v. Felix Mendoza*, No. DP-91-CR-129-H (W.D. Tex. 12-10-91) (52-year-old client with diabetes serving 20-year drug sentence escaped after 2+years; departure from 18-24 months to 12 months consecutive since defendant will be aged and infirm when he starts serving escape sentence)

*United States v Marvin Cavanaugh*, No. 91-60112-REJ (D.Or. 8-17-91) (15-21 month guideline range reduced to 12 months home detention in felon in

10

possession case because defendant was going blind, had brain damage and recently had a stroke.

*United States v. Silber*, No. S-90-0421 (D. Md.3-6-91) (27-month guideline sentence reduced to 12 months community confinement as a result of poor health and military record)

*United States v. Wilard*, No. CR90-196WD (W.D. Wash. 1-19-91) (severe asthma requiring immediate injections of adrenalin justified departure)

*United States v. Robert Gossman*, No. 89-00240-H (D. Mass 9-10-90) (8-14 month sentence decreased to 3 years probation in bank fraud case because defendant had extraordinary physical disabilities)

*United States v. David Yore*, No. CR 89-953 WDK (C.D. Cal. 5-11-90) (terminal illness and youth constituted extraordinary conditions supporting departure).

It is clear that Courts throughout the country have for years recognized physical conditions as a reason to minimize custody length.

### IV. BUREAU OF PRISONS DENIAL IS IN CONTRAVENTION OF CONGRESSIONAL INTENT

As noted by the Warden at Butner, A.F. Beeler, in a December 21, 2006 letter to United States Senator Jeff Sessions, "Mr. Shoemaker was considered for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and denied by the Regional Director on November 20, 2006. The decision was based upon Mr. Shoemaker's medical status at the time of consideration; specifically, he was **ambulatory and able to complete daily living activities**. His life expectancy is also unknown at this time, and his current treatment is aimed at prolonging his life.

11

Additionally, Mr. Shoemaker has elected to appeal the Regional Director's decision, and is currently in the appeal process."( Also see Exhibit 10- Regional Director White's Memorandum)

## V. AUTHORITY TO RECOMMEND 18 U.S.C. §3582(C)(1)(A) RELIEF

Under 18 U.S.C. §3582(c)(1)(A) a Sentencing Court, on Motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate sentenced under the Comprehensive Crime Control Act of 1984.

Further, this provision is used in particularly <u>extraordinary or compelling circumstances</u> which could not reasonably have been foreseen by the Court at the time of sentencing.

It is clear in the instant case that the Court, at sentencing, was not made aware of Shoemaker's health problems, and had no idea of the post sentencing prognosis of terminal illness.

(1) Medical reports confirm his condition and prognosis.

(2) Upon release, Shoemaker will live with Sarah Shoemaker who is a law abiding and productive citizen.

His release plans are noted as follows:

Sponsor: Sarah Shoemaker

Address: 716 Co. Rd. 36, Hartford, AL 36344

Employment: None

Telephone: 334-588-3604; 334-797-1736

Support: Mrs. Shoemaker will provide moral and financial support.

Treatment: Shoemaker will receive treatment in the community.

Direct Supervisor: N/A

## VI. CONCLUSION

It is clear that Shoemaker's circumstances are so grave that the Court should urge the Bureau of Prisons to reconsider the denial of the compassionate release so as to enable Shoemaker to spend his last months with his wife and die at home.

Respectfully submitted this 5th day of March 2007.

_____
Susan G. James (ASB-7956-J64S)
Attorney for Movant

Address of Counsel:
Law Office of
Susan G. James and Associates
600 S. McDonough St. - P.O. Box 198
Montgomery, AL  36101-0198
334/269-3330
334/263-4888 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing was served upon Tommie Hardwick, Assistant United States Attorney, P. O. Box 197, Montgomery, Alabama 36101 this 5th day of March 2007.

The above instrument was served via:
( ) personal service
(✓) first class mail
( ) certified mail, return receipt requested
( ) facsimile
( ) overnight courier

_____
Of Counsel